UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

MARVIN BERNARDINO CUN CHITAY                                          PETITIONER

V.                                             CIVIL ACTION NO. 5:25-CV-113-DCB-ASH

PAM BONDI, ET AL.                                                   RESPONDENTS

REPORT AND RECOMMENDATION

Petitioner Marvin Bernardino Cun Chitay, through counsel, has filed this 28 U.S.C.

§ 2241 petition challenging his detention without a bond hearing pending the outcome of

immigration removal proceedings against him. As explained below, the undersigned

recommends that Cun Chitay's petition be granted in part.

I.      Facts and Procedural History

Cun Chitay "is a native and citizen of Guatemala who entered the United States [i]n or

about 2008 without inspection" and "has maintained continuous presence in the United States

since entering." Pet. [1] ¶ 1. He "is married to a United States citizen . . . and has four children

with her." *Id.* ¶ 34. In 2022, the Department of Homeland Security (DHS) approved a visa

petition filed by Cun Chitay's wife on his behalf.[1] Ex. A [1-1]. In March 2025, DHS approved

Cun Chitay's application for a provisional unlawful presence waiver.[2] Ex. B [1-2].

---

[1] "United States citizens and lawful permanent residents may file a visa petition on behalf of certain relatives to obtain lawful permanent residency in the United States." *Bolvito v. Mukasey*, 527 F.3d 428, 430–31 (5th Cir. 2008).

[2] Title 8 U.S.C. § 1182(a)(9)(B)(i)(II) makes an alien who "has been unlawfully present in the United States for one year or more" "ineligible to receive [a] visa[] and ineligible to be admitted to the United States." Section 1182(a)(9)(B)(v) permits the Attorney General to waive that inadmissibility "in the case of an immigrant who is the spouse . . . of a United States citizen . . . if it is established to the satisfaction of the Attorney General that the refusal of admission to such immigrant alien would result in extreme hardship to the citizen . . . spouse . . . of such alien." "A provisional unlawful presence waiver . . . [d]oes not take effect unless, and until, the alien who

On July 14, 2025, Cun Chitay "was arrested by immigration authorities as part of a widescale immigration enforcement action" and placed in removal proceedings. Pet. [1] ¶ 29; *see* 8 U.S.C. § 1229a(a)(1) ("An immigration judge shall conduct proceedings for deciding the inadmissibility or deportability of an alien."). He appeared for a hearing before an immigration judge (IJ) on July 28, 2025. Over the objection of DHS's attorney, the IJ granted Cun Chitay's motion to terminate the removal proceedings. *See* 8 C.F.R. § 1003.18(d) ("Immigration judges shall have the authority to terminate cases before them . . . ."). DHS appealed the termination of the removal proceedings to the Board of Immigration Appeals (BIA). The record before the Court indicates that appeal remains pending.

Pending final resolution of the removal proceedings, Cun Chitay is being detained by DHS at the Adams County Correctional Center in Natchez, Mississippi. Cun Chitay has been held without bond since his July 14 arrest, and Respondents takes the position that he is not entitled to a bond hearing. Cun Chitay filed this § 2241 habeas petition against Attorney General Pam Bondi; DHS Secretary Kristi Noem; Acting Director of Immigration and Customs Enforcement (ICE) Todd Lyons; New Orleans Acting Field Director of ICE Brian Acuna; and Raphael Vergara, Warden of the Amite County Correctional Center, on October 16, 2025. He alleges that his present detention without a bond hearing violates 8 U.S.C. § 1226(a) and the Due Process Clause of the Fifth Amendment.[3] He asks the Court to "[d]eclare that [his] inability to seek a bond redetermination hearing before an immigration judge violates" federal law, "[i]ssue

---

applied for and obtained" it "[d]eparts from the United States;" "[a]ppears for an immigrant visa interview at a U.S. Embassy or consulate; and" "[i]s determined to be otherwise eligible for an immigrant visa by the Department of State in light of the approved provisional unlawful presence waiver." 8 C.F.R. § 212.7(e)(12).

[3] Cun Chitay's petition invokes 28 U.S.C. § 2241(c)(1), which permits the Court to grant habeas relief to a prisoner "in custody under or by color of the authority of the United States."

a writ of habeas corpus requiring that Defendants release [him,]" "[s]et aside Respondents' unlawful detention policy under the [Administrative Procedures Act,]" and award him "reasonable attorneys' fees and costs." Pet. [1] at 10. Respondents filed a response [7] in opposition to Cun Chitay's petition, and Cun Chitay filed a reply [9].

II.    Analysis

Respondents argue that (1) many of them are improper parties; (2) Cun Chitay's petition is due to be dismissed for failure to exhaust; (3) the Court lacks jurisdiction to hear Cun Chitay's petition generally and to grant declaratory relief specifically; (4) Cun Chitay is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A); and (5) Cun Chitay's detention without a bond hearing pending the outcome of his removal proceedings does not violate his due-process rights. The Court begins, as it must, with jurisdiction.

A.    Jurisdiction

1.    8 U.S.C. § 1252(g)

Respondent first argues that 8 U.S.C. § 1252(g) bars judicial review of Cun Chitay's claims. That section provides:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

The United States Supreme Court has explained that § 1252(g) "applies only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (quoting 8 U.S.C. § 1252(g)). The Court thus "rejected as

3

'implausible' the Government's suggestion that § 1252(g) covers 'all claims arising from deportation proceedings' or imposes 'a general jurisdictional limitation.'" *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19 (2020) (quoting *Reno*, 525 U.S. at 482). The Fifth Circuit "has recognized that section 1252(g) does not bar courts from reviewing an alien detention order, because such an order, 'while intimately related to efforts to deport, is not itself a decision to execute removal orders and thus does not implicate section 1252(g).'" *Cardoso v. Reno*, 216 F.3d 512, 516–17 (5th Cir. 2000) (quoting *Zadvydas v. Underdown*, 185 F.3d 279, 285 (5th Cir. 1999), *vacated sub nom.*, *Zadvydas v. Davis*, 533 U.S. 678 (2001)) (additional internal quotation marks omitted).

Cun Chitay is not challenging a decision to execute a removal order—indeed, there is currently no removal order to execute. Nor is he challenging the decision to commence or adjudicate his removal proceedings. Instead, he challenges his ongoing detention pending the outcome of removal proceedings. The undersigned concludes that § 1252(g) does not bar consideration of Cun Chitay's claims.

      2.    8 U.S.C. § 1252(b)(9)

Respondents next argue that 8 U.S.C. § 1252(b)(9) prevents the Court from addressing Cun Chitay's claims. That section provides:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or

nonstatutory), to review such an order or such questions of law or fact.[4]

Section 1252(b)(9) is one of nine subsections setting forth "requirements" for actions for "review of an order of removal." *Id.* § 1252(b).[5]

The Supreme Court has described § 1252(b)(9)'s jurisdictional bar as containing "targeted language" that "'does not present a jurisdictional bar' where those bringing suit 'are not asking for review of an order of removal,' 'the decision . . . to seek removal,' or 'the process by which . . . removability will be determined.'" *Regents of the Univ. of Cal.*, 519 U.S. at 19 (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 294–95 (2018) (plurality opinion)); *accord Duarte v. Mayorkas*, 27 F.4th 1044, 1056 (5th Cir. 2022) ("[W]here review of an agency determination involves neither a determination as to the validity of . . . deportation orders or the review of any question of law or fact arising from . . . deportation proceedings, § 1252(a)(5) and (b)(9) should not operate as a bar to the district court's review."). "[M]any other courts have specifically found that § 1252(b)(9) does not present a jurisdictional bar to habeas challenges to immigration detention." *Santiago v. Noem*, No. 25-CV-361, 2025 WL 2792588, at *5 (W.D. Tex. Oct. 2, 2025) (collecting cases). The undersigned joins those courts; § 1252(b)(9) does not bar this Court's consideration of Cun Chitay's claims.

       3.      Declaratory Relief

Respondents' final jurisdictional argument is that the Court lacks jurisdiction to provide the declaratory relief Cun Chitay seeks, arguing that such relief is barred by 8 U.S.C. § 1252(g)'s

---

[4] Judicial review claims under §1252(b)(9) must be "filed with an appropriate court of appeals." *Id.* § 1252(a)(5).

[5] The first such requirement is that "[t]he petition for review . . . be filed not later than 30 days after the date of the final order of removal." 8 U.S.C. § 1252(b)(1). Here, there is no final order of removal: an IJ terminated Cun Chitay's removal proceedings.

proscription of judicial review of "the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders." But as explained above, § 1252(g) does not bar consideration of Cun Chitay's petition. Respondents have not demonstrated that the Court lacks jurisdiction to award declaratory relief. *See* 28 U.S.C. § 2201(a) ("In a case of actual controversy within its jurisdiction, except with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code of 1986, a proceeding under section 505 or 1146 of title 11, or in any civil action involving an antidumping or countervailing duty proceeding . . . , any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.").

B.     Proper Respondent(s)

"The federal habeas statute straightforwardly provides that the proper respondent to a habeas petition is 'the person who has custody over [the petitioner.]'" *Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004) (quoting 28 U.S.C. § 2242). This "immediate custodian" rule means that "in habeas challenges to present physical confinement . . . the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." *Id.* at 435. Based on this authority, Respondents argue that Bondi, Noem, Lyons, and Acuna should be dismissed, leaving Vergara, the warden of the facility where Cun Chitay is being held, as the sole Respondent.[6]

The undersigned agrees with Respondents that Bondi, Noem, and Lyons—supervisory officials who cannot properly be characterized as Cun Chitay's "immediate custodian"—are not

---

[6] There is no question that Cun Chitay's petition was filed in the only proper jurisdiction: "the district of confinement." *Padilla*, 542 U.S. at 443.

6

proper Respondents. Acuna presents a closer call. Some courts have concluded that the ICE "District Director for the district where a detention facility is located 'has power over' alien habeas corpus petitioners" and is therefore properly considered their immediate custodian. *Roman v. Ashcroft*, 340 F.3d 314, 320 (6th Cir. 2003) (quoting *Henderson v. INS*, 157 F.3d 106, 122 (2d Cir. 1998), *cert. denied*, 526 U.S. 1004 (1999)); *see id.* at 320 n.4 (collecting cases). The Sixth Circuit in *Roman* explained that "[a]s the heads of the basic operating units of the [Immigration and Naturalization Service], District Directors oversee the confinement of aliens in all three kinds of INS detention facilities—'Service Processing Centers,' 'Contract Detention Facilities,' and '[s]tate or local government facilities used by INS through Intergovernmental Service Agreements." *Id.* at 320 (citing Detention Operations Manual: Admissions and Release 1 (Sept. 20, 2000)).[7] And while the wardens of facilities housing alien detainees have some measure of "daily control . . . over federal [immigration] detainees, they have that control solely pursuant to the direction of the INS." *Id.*

The applicable federal regulations provide that "the district director" makes "an initial custody determination"—"including the setting of a bond"—for an alien in removal proceedings. 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1). So Acuna has immediate authority over decisions regarding Cun Chitay's access to release on bond while he is in removal proceedings. In view of this, following the logic of the Sixth Circuit in *Roman*, and considering the thin argument on this point presented by Respondents, the undersigned concludes that New Orleans Acting Field

---

[7] "The office of Immigration and Customs Enforcement, a unit of the Department of Homeland Security, has assumed responsibility for enforcement of the immigration laws after implementation of the Homeland Security Act of 2002." *Kholyavskiy v. Achim*, 443 F.3d 946, 948 n.1 (7th Cir. 2006) (citations omitted). "The old INS district directors are now titled [ICE] 'Field Office Directors,' but their functions remain the same." *Id.* (citation omitted).

Director of ICE Acuna has failed to demonstrate that he is entitled to dismissal.[8] *See Maldonado v. Macias*, 150 F. Supp. 3d 788, 795 (W.D. Tex. 2015) (concluding that either ICE field director or warden of facility where alien petitioner was detained was proper respondent and declining to dismiss warden over respondents' argument that ICE field director was sole proper respondent). The undersigned therefore recommends that the claims against Bondi, Noem, and Lyons be dismissed, leaving Vergara and Acuna as Respondents.

C.      Exhaustion

Though exhaustion is not required by statute, federal courts generally require § 2241 petitioners "to exhaust [their] administrative remedies before seeking habeas relief in federal court." *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994). Respondents suggest that until the BIA resolves DHS's appeal of the IJ's order terminating the removal proceedings, Cun Chitay has not exhausted his present claims. Resp. [7] at 7. But DHS's appeal of the IJ's decision to terminate the removal proceedings does not directly address the subject of Cun Chitay's habeas petition— his ongoing detention without a bond hearing. And while Respondents point to several regulations providing the BIA with authority to review Cun Chitay's custody status, the undersigned agrees with "[n]umerous courts" that have found that requiring a petitioner "to wait, indefinitely, for a ruling on [a BIA] appeal would be inappropriate because it would exacerbate his alleged constitutional injury—detention without a bond hearing." *Covarrubias v. Vergara*, No. 5:25-CV-112, 2025 WL 2950096, at *6 (S.D. Tex. Oct. 3, 2025) (quoting *Lopez-Arevelo v. Ripa*, 801 F. Supp. 3d 668, 680 (W.D. Tex. 2025)); *cf. Jennings*, 583 U.S. at 293 (observing the risk of prolonged detention because "by the time a final order of removal was eventually entered,

---

[8] Respondents devote a single paragraph to the argument that only Vergara is a proper Respondent. Resp. [7] at 6.

the allegedly excessive detention would have already taken place," not to mention the possibility "that no such order would ever be entered in a particular case, depriving that detainee of any meaningful chance for judicial review"). The undersigned recommends excusing the purported failure to exhaust.[9]

D.    Statutory Interpretation

Having resolved the preliminary issues, the Court turns to the merits: may Respondents lawfully detain Cun Chitay without a bond hearing. That question turns on whether Respondents are correct that Cun Chitay is subject to detention under 8 U.S.C. § 1225(b)(2). The Court begins with the statutory language.

Section 1225(b) covers "[i]nspection of applicants for admission." Subsection 1225(b)(1) (which no party suggests applies to Cun Chitay) provides:

> [i]f an immigration officer determines that an alien . . . who is arriving in the United States . . . is inadmissible under section 1182(a)(6)(C) or 1182(a)(7) of this title, the officer shall order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum . . . or a fear of persecution.[10]

Subsection 1225(b)(2) governs "[i]nspection of other aliens" and provides: "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall

---

[9] It's also not clear precisely *how* Cun Chitay would go about exhausting his present habeas claims. For example, it is not evident whether a procedure even exists for Cun Chitay to appeal separately the refusal to provide him a bond hearing at all to the BIA. Even if he could, it would be futile. The BIA has concluded—erroneously, in the undersigned's opinion—that petitioners like Cun Chitay are ineligible for bond hearings. *In re Hurtado*, 29 I. & N. Dec. 216 (BIA 2025).

[10] Section 1182(a)(6)(C) makes ineligible for admission to the United States an "alien who falsely represents, or has falsely represented, himself or herself to be a citizen of the United States for any purpose or benefit under this chapter . . . or any other Federal or State law." Section 1182(a)(7) makes an alien "not in possession of a . . . valid entry document" inadmissible to the United States.

be detained for" removal proceedings. Thus, "Section 1225(b)(2) requires someone to be detained if three conditions are met: (1) the person is an 'applicant for admission'; (2) the person is 'seeking admission'; and (3) an 'examining immigration officer determines' the person 'is not clearly and beyond a doubt entitled to be admitted.'" *Rodriguez Lara v. Bondi*, No. 25-CA-1581, 2025 WL 3654263, at *4 (W.D. Tex. Dec. 16, 2025) (quoting 8 U.S.C. § 1225(b)(2)).

The parties agree that § 1225(a) deems Cun Chitay to be an "applicant for admission." 8 U.S.C. § 1225(a) ("An alien present in the United States who has not been admitted or who arrives in the United States . . . shall be deemed for purposes of this chapter an applicant for admission."). And they seem to agree that whether he "was 'seeking admission'" is a separate question. Resp. [7] at 12. Where they part ways is on whether Cun Chitay was "seeking admission" to the United States when he was brought into custody for removal proceedings. Respondents' position is that all aliens illegally present in the United States—other than those "who withdraw[ their] application[s] for admission and 'depart[] immediately from the United States,'" and those "who agree[] to voluntarily depart 'in lieu of being subject to'" removal proceedings—are seeking admission. Resp. [7] at 14 (quoting 8 U.S.C. §§ 1225(a)(4), 1229c(a)(1)). Cun Chitay argues that Respondents' interpretation of § 1225(b)(2) would render "the Laken Riley Act's recent expansion of mandatory detention under § 1226(c)(1)(E)" superfluous.[11] Reply [9] at 8. He also notes that he has never formally "applied for admission to the United States" and argues that he cannot be fairly described as seeking admission. *Id.* at 7.

---

[11] That section provides that the "Attorney General shall take into custody any alien who" is inadmissible under 8 U.S.C. § 1182(a)(6)(A), (a)(6)(C), or (a)(7) and "is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person."

The undersigned concludes that although Cun Chitay is deemed an "applicant for admission," he was not "seeking admission" at the time of his detention. The phrase "seeking admission" is not synonymous with the defined term of art "applicant for admission." For one thing, Congress separately defined "admission." Under 8 U.S.C. § 1101(a)(13)(A), "[t]he terms 'admission' and 'admitted' mean, with respect to an alien, the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." "[A]lthough the INA does not currently define the term 'entry,' [courts] have long understood this term to refer to 'coming from outside' into the United States." *Torres v. Barr*, 976 F.3d 918, 924 (9th Cir. 2020) (quoting *United States ex rel. Claussen v. Day*, 279 U.S. 398, 401 (1929)).

Respondents cite *Torres* favorably for its discussion of the history of the passage of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA). Resp. [7] at 2; *Torres*, 976 F.3d at 927–28 (observing the IIRIRA eliminated the ability for "non-citizens who had entered without inspection [to] take advantage of the greater procedural and substantive rights afforded in deportation proceedings" by classifying anyone who has not been lawfully admitted as an "applicant for admission" under § 1225(a)(1)'s deeming provision (citations omitted)). But *Torres*'s treatment of "applicant for admission" supports Cun Chitay's reading of § 1225(b)(2). *Torres* overruled an earlier panel decision in *Minto*, which had "put [the Ninth Circuit's] interpretation of § 1182(a)(7) at odds with two other circuit courts' constructions of the statute." 976 F.3d at 927. In doing so, *Torres* explained it was error for *Minto* to conflate "applicant for admission" in § 1225(a)(1) with "application for admission" in § 1182(a)(7). *Id.* This was a result of *Minto*'s misunderstanding "that the phrase 'applicant for admission' is a term of art denoting a particular legal status, as the history of its enactment makes clear." *Id.* *Torres* did not consider the phrase "seeking admission," but its careful treatment of "applicant

11

for admission" in § 1225(a)(1) demonstrates the error in misusing that term of art to define the phrase "seeking admission." *See id.* at 929 ("Congress did not act to define 'application' in that same provision [defining 'admission'], however, so it could not have meant *sub silentio* to equate 'applicant' [in the deeming phrase 'applicant for admission'] with 'application' [in the phrase 'application for admission.']").

"Beyond the law itself, dictionary definitions inform the plain meaning of a statute." *United States v. Radley*, 632 F.3d 177, 182 (5th Cir. 2011). Merriam-Webster defines "entry" as "the act of entering" and "the right or privilege of entering." *Entry*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/entry [https://perma.cc/6G7M-BR2T] (last visited Jan. 21, 2026). When Cun Chitay was detained in 2025, he was not seeking entry, much less "lawful entry . . . after inspection and authorization." 8 U.S.C. § 1101(a)(13)(A); *see Martinez v. Mukasey*, 519 F.3d 532, 544 (5th Cir. 2008), *as amended* (June 5, 2008) ("Under th[e] statutory definition, 'admission' is the lawful *entry* of an alien after inspection, something quite different, obviously, from post-entry adjustment of status . . . ."). Instead, he had been living in the United States for roughly 17 years.

Additionally, "seeking admission" cannot mean the same thing as "applicant for admission" because it would render the former's use in § 1225(b)(2) redundant. Instead, § 1225(b)(2) "expressly incorporates that term of art"—applicant for admission—"separate and apart from its use of 'admitted,' as defined by § [1]101(a)(13)." *Martinez*, 519 F.3d at 546 (looking to separate definition provisions in the INA to construe the clause "previously admitted" as distinct from the term of art "lawfully admitted for permanent residence" in 8 U.S.C. § 1182(h)). For this reason, the undersigned disagrees with the non-binding decisions relied upon by Respondents. Resp. [7] at 17–18 (collecting cases).

12

In summary, Cun Chitay was not "seeking admission" to the United States in 2025. He made his entry into the United States over a decade earlier. So Respondents may not detain him under § 1225(b)(2).

Instead, § 1226(a) provides a basis for detaining Cun Chitay. It provides,

> [o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as [otherwise] provided . . . the Attorney General—
>
> (1) may continue to detain the arrested alien; and
>
> (2) may release the alien on—
>
>> (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
>>
>> (B) conditional parole; but
>
> (3) may not provide the alien with work authorization . . . unless the alien is lawfully admitted for permanent residence or otherwise would (without regard to removal proceedings) be provided such authorization.

8 U.S.C. § 1226(a). "Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)). Specifically, "[w]hen a person is apprehended under § 1226(a), an ICE officer makes the initial custody determination." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022) (citing 8 C.F.R. § 236.1(c)(8)). "The alien [may] be released if he 'demonstrate[s] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding.'" *Id.* (quoting 8 C.F.R. § 236.1(c)(8)). And a detainee dissatisfied with this initial determination "may request a bond hearing before an IJ at any time before a removal order becomes final." *Id.* at 1197 (citing 8

13

C.F.R. § 236.1(d)(1)). A detainee dissatisfied with the result before the IJ may appeal to the BIA. 8 C.F.R. §§ 236.1(d)(3)(i) & 1236.1(d)(3)(i).

Respondents have not provided Cun Chitay any of this. At minimum, under the regulations, he is entitled to a bond hearing before an IJ and an appeal from the IJ's decision to the BIA. The undersigned therefore recommends that the Court order Respondents to provide Cun Chitay with a bond hearing before an IJ. *See Trump v. J.G.G.*, 604 U.S. 670, 672 (2025) ("[I]mmediate physical release [is not] the only remedy under the federal writ of habeas corpus." (quoting *Peyton v. Rowe*, 391 U.S. 54, 67 (1968))); *see also Lopez-Arevelo*, 801 F. Supp. 3d at 687 (noting that "the comfortable majority position" in these immigration-detention habeas cases "is to . . . require a bond hearing before an IJ" and collecting cases).[12] [13]

E.      Request for Attorney's Fees

Finally, Cun Chitay seeks attorney's fees under the Equal Access to Justice Act. The Fifth Circuit has held that "the EAJA does not authorize attorney's fees for successful 28 U.S.C. § 2241 motions." *Barco v. White*, 65 F.4th 782, 785 (5th Cir. 2023). The undersigned thus recommends the request for fees be denied.

III.    Conclusion and Recommendation

The undersigned has considered all arguments. Any not addressed would not have changed the outcome. For the foregoing reasons, the undersigned recommends that the Court

---

[12] Because the undersigned concludes Cun Chitay is entitled to habeas relief without considering the due-process claim, it need not address that issue. *See F.C.C. v. Pacifica Foundation*, 438 U.S. 726, 734 (1978) (expressing "settled practice to avoid the unnecessary decision" of "constitutional questions").

[13] Cun Chitay has not provided the Court with any authority suggesting that it can "[s]et aside Respondents' unlawful detention policy" as a whole beyond his citation of the Administrative Procedure Act. The Court declines to consider Cun Chitay's non-habeas claims. *See Guzman Tovar v. Noem*, No. 5:25-CV-1509, 2025 WL 3471416, at *6 (W.D. Tex. Nov. 25, 2025).

enter an order: (1) dismissing the claims against Bondi, Noem, and Lyons; (2) declaring that Cun Chitay is not properly detained under 8 U.S.C. § 1225(b)(2) and that Respondents' failure to provide him with a bond hearing before an IJ violates the applicable law and regulations; (3) granting in part Cun Chitay's habeas petition and ordering Respondents to provide Cun Chitay with an individualized bond hearing before an IJ in accordance with 8 U.S.C. § 1226(a) and 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1) within 7 days of the entry of an Order adopting this Report and Recommendation; and (4) denying Cun Chitay's request for attorney's fees.

IV.     Notice of Right to Object

In accordance with Federal Rule of Civil Procedure 72 and 28 U.S.C. § 636(b)(1), any party, within fourteen days after being served a copy of this report and recommendation, may serve and file written objections to the recommendations, with a copy to the United States District Judge, the Magistrate Judge, and the opposing party. The District Judge at the time may accept, reject, or modify, in whole or part, the recommendations of the Magistrate Judge, or may receive further evidence or recommit the matter to the undersigned with instructions. The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court for which there is no objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *Alexander v. Verizon Wireless Services, L.L.C.*, 875 F.3d 243, 248 (5th Cir. 2017); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

Respectfully submitted, this the 22nd day of January, 2026.

s/ *Andrew S. Harris*
UNITED STATES MAGISTRATE JUDGE

15